# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia County Department of : 
Human Services, : 
                    Petitioner : 
                           : No. 659 C.D. 2019
           v. : SUBMITTED: June 12, 2020
                           : 
Department of Human Services, : 
                Respondent : **CASE SEALED**


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                 **FILED: November 23, 2020**


        The Philadelphia County Department of Human Services (Agency) petitions for review of the Commonwealth of Pennsylvania, Department of Human Services' (DHS) order sustaining the administrative appeal of R.V. (Father) and granting the expunction of the Agency's indicated report naming R.V. as the perpetrator of child abuse against his son, L.V. (Child), under the Child Protective Services Law (CPSL), 23 Pa.C.S. §§ 6301- 6387. We affirm.

        The facts found by the Administrative Law Judge (ALJ) and adopted by DHS's Bureau of Hearings and Appeals (BHA) are as follows. (Findings of Fact "F.F." Nos. 1-24, Adjudication at 2-4.) Child was approximately one year of age in June 2018. In June 2018, Child was diagnosed with, among other things, rickets. As of June 11, 2018, Child had not been seen by a medical professional since his first week of life. Father, Child, and R.D. (Mother), had moved from Virginia to

Philadelphia approximately one month following Child's birth in 2017. Father and Mother were having difficulties scheduling Child for medical care due to logistical issues involving the move, including but not limited to scheduling issues with a preferred physician associated with the Children's Hospital of Philadelphia (CHOP), who saw Child's older brother; scheduling issues for Father, who was in the United States Army at the time; and insurance coverage issues for Child. Child had not received any immunizations until June 11, 2018.

On June 13, 2018, the Agency's investigating intake social worker received a report of abuse regarding Child. On June 14, 2018, the social worker commenced an investigation of allegations of abuse against Father by visiting Child at CHOP and speaking to Mother. The social worker also spoke with Father, who admitted that he knew that Child had not received medical care. On August 6, 2018, an indicated report of child abuse was filed with the ChildLine and Abuse Registry,[1] alleging physical abuse of Child as a result of serious physical neglect consisting of a failure to provide medical treatment or care by Father. The indicated report was specifically related to Child's medical condition of rickets.

Father appealed the indicated report to DHS and filed a request to skip the administrative review and proceed to a hearing. On November 28, 2018, the ALJ convened a hearing on the merits of the appeal, at which Father appeared *pro se*. (F.F. Nos. 14 and 24, Adjudication at 3-4.)

At the hearing, the Agency produced medical records from CHOP regarding the treatment of Child. The Agency presented the testimony of Andrea

---

[1] The ChildLine and Abuse Registry is a statewide system for receiving reports of suspected child abuse, referring reports for investigation, and maintaining those reports. 23 Pa.C.S. § 6332. A report of suspected child abuse may be either "indicated," "founded," or "unfounded." 23 Pa.C.S. §§ 6337, 6338. In the case of "indicated" or "founded" reports, the information is placed in the statewide central registry. 23 Pa.C.S. § 6338(a).

Bradford, M.D., the attending physician who had examined Child at CHOP. Dr. Bradford did not opine within a reasonable degree of medical or professional certainty that any of Child's medical conditions were caused by abuse. (F.F. No. 17, Adjudication at 17-18.) Dr. Bradford was not qualified by the Agency as an expert witness and did not state any of her findings within a reasonable degree of medical or professional certainty. (*See id.*) Dr. Bradford specifically testified that she was not an expert in rickets. (F.F. No. 19, Adjudication at 4.) Dr. Bradford testified that vaccinations are recommended but not mandatory. (F.F. No. 20, Adjudication at 4.)

Mother testified that the lack of medical appointments for Child was based on an inability for her to schedule appointments for the first year of his life, because CHOP was fully booked. (F.F. No. 21, Adjudication at 4.) The ALJ found Mother's testimony credible. (F.F. No. 22, Adjudication at 4.)

The ALJ found that no evidence had been presented as to the amount of responsibility that Father shared with Mother for the medical care of Child. (F.F. 23, Adjudication at 4.) Father, though present at the hearing, elected not to testify or put on a case. (F.F. No. 24, Adjudication at 4.)

Of relevance to the instant case, the ALJ concluded that Dr. Bradford's testimony was inadmissible to establish the Agency's allegations of abuse because she was not qualified as an expert and did not testify within a reasonable degree of medical certainty. (Adjudication at 9-10.) The ALJ also found that Dr. Bradford's testimony did not establish a causal link between Father's conduct and any harm to Child, and was thus legally and factually incompetent to establish culpability of Father. (Adjudication at 10.) Thus, the ALJ found that the Agency failed to satisfy the burden to prove child abuse under Section 6303(b.1)(7) of the CPSL: "[t]he term 'child abuse' shall mean intentionally, knowingly or recklessly . . . [c]ausing serious

3

physical neglect of a child," 23 Pa.C.S. § 6303(b.1)(7), and had not proven by substantial evidence that Father was a perpetrator of child abuse, resulting in a recommendation to sustain the appeal and expunge the indicated report of child abuse against Father from the ChildLine and Abuse Registry. (ALJ Adjudication at 10.)

In May 2019, BHA adopted the recommendation of the ALJ in its entirety. Thereafter, the Agency filed the instant petition for review.

On appeal, the Agency raises the following issues:

> Whether [the] BHA erred by requiring [the Agency] to qualify as an expert witness . . . [C]hild's treating physician who was called to testify as a fact witness and whose testimony was based on [her] perceptions and was helpful to a clear understanding of her testimony?

> Whether [the] BHA erred in concluding that [the Agency] failed to establish a nexus between [Father]'s failure to provide Child with medical care and any harm sustained by . . . Child where the evidence established that [Father] knowingly failed to provide medical care to Child?

(Agency Br. at 4.)

These issues are interrelated. Because we find that Dr. Bradford's testimony was not admissible to establish the Agency's allegations of abuse, we find that the Agency failed to meet its burden. The Agency argues that Dr. Bradford testified as a fact witness and gave opinions rationally based on her observations, which was permitted. We disagree with the Agency that Dr. Bradford was qualified to offer such opinions.

The boundaries of what opinions may be presented by a non-expert witness are found in Rule 701 of the Pennsylvania Rules of Evidence, which provides as follows:

4

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701 (relating to opinion testimony of lay witnesses). Rule 702 provides in relevant part that "[a] witness *who is qualified* as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson." Pa.R.E. 702(a) (relating to testimony by expert witnesses) (emphasis added).

While the Agency is correct that fact testimony may include opinions so long as those opinions or inferences are rationally based on the witness's perceptions and helpful to a clear understanding of his or her testimony, Pa.R.E. 701, "technical expertise does not *ipso facto* convert a fact witness, who might explain how data was gathered, into an expert witness, who renders an opinion based on the data." *Deeds v. Univ. of Pa. Med. Ctr.*, 110 A.3d 1009, 1017 (Pa. Super. 2015) [quoting *Branham v. Rohm & Haas Co.,* 19 A.3d 1094, 1110 (Pa. Super. 2011)]. To testify as an expert witness, *i.e.*, with regard to "scientific, technical, or other specialized knowledge beyond that possessed by a layperson," *see* Pa.R.E. 702, a lay witness must be qualified as an expert to offer an expert opinion. *See Risperdal Litig. W.C. v. Janssen Pharms., Inc.*, 174 A.3d 1110, 1122 (Pa. Super. 2017) (trial court abused its discretion by not determining whether physician's assistant was an expert witness and permitting her to offer expert opinion at trial). This is the case

5

*even* where the witness in question might have qualified as an expert but for the trial court's erroneous determination that she was not so qualified. *See id.*

It is not disputed that Dr. Bradford was not qualified at the hearing as an expert. In fact, as noted by the ALJ, Dr. Bradford specifically denied expertise on the subject of rickets. Dr. Bradford's testimony was not limited to her observations, but relied upon scientific and specialized knowledge, including knowledge obtained from sources other than herself. Specifically, Dr. Bradford found a causal relationship between bony abnormalities observed in a radiologist's findings to lab work indicating a deficiency of vitamin D and inadequate calcium and phosphorous absorption. (Nov. 28, 2019 Hearing, Notes of Testimony "N.T." at 68, 73, and 75; Reproduced Record "R.R." at 118a, 123a, and 125a.) Such an opinion based upon specialized knowledge is the sole domain of expert witnesses under Pa.R.E. 701 and 702. Furthermore, in order to prove that Father knowingly committed child abuse, the Agency needed to establish, at a minimum, that Father knew that he was not getting proper medical treatment for Child and that such failure would result in harm to Child. *See* 23 Pa.C.S. § 6303 (incorporating into the CPSL the Crimes Code definition of "knowingly," 18 Pa.C.S. § 302). The evidence presented did not establish this. Dr. Bradford could not recall speaking to Father, (N.T. at 66; R.R. at 116a), and Mother's testimony demonstrates that she was primarily responsible for obtaining medical care for the children due to Father's military obligations and work schedule. (N.T. at 92; R.R. at 142a.)[2]

---

[2] The record does not reflect whether the Agency filed a report of child abuse against Mother and, if not, why it chose not to do so.

As the Agency failed to establish its allegations of child abuse, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Philadelphia County Department of Human Services, | : : | |
| Petitioner | : : | |
| | : | No. 659 C.D. 2019 |
| v. | : : | |
| Department of Human Services, | : | |
| Respondent | : | **CASE SEALED** |

# O R D E R

AND NOW, this 23rd day of November, 2020, the Order of the Department of Human Services is AFFIRMED.

 

 

 

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge